IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDISBEL M. PABÓN MERCADO,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 19-1843 (MEL)

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Ms. Edisbel M. Pabón Mercado's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 14. On December 9, 2015, Plaintiff filed an application for Social Security benefits alleging that she initially became unable to work due to disability on December 4, 2014 ("the onset date"). Tr. 310.[1] Prior to the onset date, Plaintiff worked as a school bus driver. Tr. 320-21. Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. Tr. 312. Plaintiff's disability claim was denied on March 7, 2016, and upon reconsideration. Tr. 310.

Thereafter, Plaintiff requested a hearing which was held on July 18, 2018, before Administrative Law Judge Harold Glanville ("the ALJ"). Tr. 15-32, 310. On August 17, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 323. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to

---

[1] "Tr." refers to the transcript of the record of proceedings.

judicial review. Tr. 1-5. Plaintiff filed a complaint on September 8, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 14, 23.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. Tr. 312. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, rheumatoid arthritis, enthesopathy of hip region, osteoarthrosis, right knee arthritis, obesity, and a depressive disorder. Tr. 312. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 313. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she has to alternate positions between sitting and standing at intervals of two hours during a daily eight-hour work routine. The claimant can occasionally use ramps and stairs, but never climb ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can use her judgment to understand, remember and carry out short, simple, and repetitive instructions and tasks; and can frequently respond appropriately to supervision, coworkers, usual work situations, and changes in a routine work setting; with only occasional interaction with the public.[2]

Tr. 316. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a school bus driver. Tr. 320, 321. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 26-28, 321, 322. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: hand worker (print and publishing), gluer (any industry), and circuit breaker assembler. Tr. 27. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 322, 323.

---

[2] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling ("SSR") 83–10, 1983 WL 31251, at *6.

**III.     Legal Analysis**

Plaintiff objects to the ALJ's final decision denying disability benefits on four grounds. First, Plaintiff alleges that the ALJ erred at step three by not finding that she satisfied the requirements of Listings 1.04 and 14.09. ECF No. 14, at 16-20. Next, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence. Id. at 19-22. It is also claimed by Plaintiff that the ALJ did not properly consider her complaints of pain. Id. at 19. Lastly, Plaintiff contends that the ALJ's step five determination is not supported by substantial evidence. Id. at 9, 21-22.

**A. The ALJ's Step Three Determination**

Plaintiff claims that the ALJ erred at step three of the sequential process by not finding that she met the criteria of Listings 1.04 and 14.09. ECF No. 14, at 16-20. At step three, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the claimant."). To meet the criteria of a listing, the claimant's impairment must satisfy all the duration and objective medical requirements. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

Plaintiff argues that the ALJ erred in not finding that she met the criteria of Listing 1.04(A) and 1.04(B) due to her musculoskeletal conditions. ECF No. 14, at 19. "Listing 1.04 is a musculoskeletal system listing related to disorders of the spine." Kilton v. Astrue, Civ. No. 11-

6

292, 2012 WL 892924, at *2 (D. Me. Mar. 14, 2012). In order to satisfy Listing 1.04, a claimant must demonstrate a disorder of the spine (such as herniated nucleus pulposus or degenerative disc disease) which compromises the nerve root or spinal cord, with

> (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

See MacNeil v. Astrue, 908 F. Supp. 2d 259, 264-65 (D. Mass. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04).

In the case at hand, the ALJ noted that the record did not reveal evidence of nerve root compression characterized by neuroanatomic distribution of pain and limitation of spinal motion. Tr. 314. The ALJ also found that the record did not contain evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in an inability to ambulate effectively. Id. In February 2016, consultant neurologist Dr. David Blas Boria ("Dr. Blas") examined Plaintiff and found that she could sit, stand, walk, and travel. Tr. 571-72. Dr. Blas opined that her gait was normal. Tr. 574. Plaintiff has not cited to any record evidence indicating that she had nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to the extent required by the medical criteria for specified medical Listings 1.04(A), 1.04(B), or 1.04(C). Because Plaintiff has not discredited the ALJ's findings, there is no reason to overturn his determination that she did not satisfy the

requirements of Listing 1.04. See Arrington v. Colvin, 216 F. Supp. 3d 217, 235 (D. Mass. 2016).

Plaintiff also argues that the ALJ erred in not finding that she met the requirements of Listing 14.09 which relates to inflammatory arthritis. ECF No. 14, at 17-18; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09. Plaintiff particularly argues that she meets the criteria of Listings 14.09(A)(1) and 14.09(D). Id. at 18. In order to satisfy the requirements of Listing 14.09(A)(1), the claimant must set forth medical evidence that shows she "suffers from persistent inflammation of, or persistent deformity of, one or more peripheral weight bearing joints resulting in the inability to ambulate effectively." Somogyi v. Berryhill, Civ. No. 16-8819, 2018 WL 1135423, at *5 (C.D. Cal. Feb. 27, 2018); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §14.09(A)(1). "Inability to ambulate effectively means an extreme limitation of the ability to walk."[3] Colón v. Comm'r of Soc. Sec., Civ. No. 19-1014, 2020 WL 5774939, at *10 (D.P.R. Sept. 28, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)).

The ALJ found that Plaintiff did not satisfy the requirements of Listing 14.09(A)(1) because the record evidence did not reveal an inability to ambulate effectively. Tr. 314. The ALJ noted that in February 2016, Dr. Blas opined that her gait was normal. Tr. 314, 571, 574. Plaintiff argues that Dr. Blas's opinion is flawed because he only examined her once. ECF No. 14, at 18. However, the mere fact that she was examined one time by Dr. Blas does not suffice as a valid reason for rejecting his opinion. See Scott v. Beryyhill, Civ. No. 17-5349, 2017 WL 5496170, at *4 (W.D. Wash. Oct. 30, 2017) (explaining that just because a state agency

---

[3] "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b).

consultant "examined plaintiff on one occasion would not, standing alone, suffice as an additional specific and legitimate reason for rejecting the opinion."); Massaglia v. Saul, 805 Fed. App'x. 406, 409-10 (7th Cir. 2020) ("[o]pinions of state agency consultants may constitute substantial evidence on the issue of whether a claimant's impairments meet a presumptive disability listing."). Plaintiff does not present any record evidence indicating that she had an inability to ambulate effectively. Thus, Plaintiff has not carried her burden of demonstrating that she satisfied all the medical criteria of Listing 14.09(A)(1). See Sullivan, 493 U.S. at 530.

In order to satisfy Listing 14.09(D), a claimant must demonstrate "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:" (1) limitation of activities of daily living, (2) limitation in maintaining social functioning, or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D). While the ALJ did not discuss Listing 14.09(D), Plaintiff has not cited to record evidence showing that she suffers from two of the constitutional symptoms or the required marked limitation. Therefore, Plaintiff has not carried her burden of citing to evidence in the record indicating that she satisfies the requirements of Listing 14.09(D). See Sullivan, 493 U.S. at 530.

Plaintiff also claims that the ALJ failed to account for the effects of her obesity at step three. ECF No. 14, at 13-15. "Obesity is not a listed impairment in Appendix 1." Rios v. Colvin, Civ. No. 15-30190, 2016 WL 7468802, at *11 (D. Mass. Dec. 28, 2016) (citing SSR 02-1p, 2002 WL 34686281, at *1). However, "the SSA provides guidance that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" Healy v. Colvin, Civ. No. 12-30205, 2014 WL 1271698, at *11

(D. Mass. Mar. 27, 2014) (quoting SSR 02-1p, 2002 WL 34686281, at *1). "In order for the ALJ to conclude that the combined effects of a claimant's obesity with his other impairments is greater, evidence in the medical record must support such a conclusion." Durant-Irizarry v. Comm'r of Soc. Sec., Civ. No. 14-1444, 2015 WL 8514587, at *4 (D.P.R. Dec. 11, 2015). Therefore, at step three, the ALJ should "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing."[4] SSR 02-1p, 2002 WL 34686281, at *5.

In the case at hand, the ALJ determined at step two that Plaintiff's obesity constituted a severe impairment. Tr. 312. At step three, the ALJ concluded that Plaintiff's obesity, when considered in combination with her other impairments, did not meet or medically equal any listing. Tr. 314. The ALJ noted that there "is no apparent clinical evidence in the record that directly attributes [Plaintiff's] obesity to a specific medically determined condition or that her obesity affects a weight-bearing joint." Id. Furthermore, Plaintiff has not "offered any objective medical evidence in the record to show that her obesity, singularly or in combination with her other impairments, met or medically equaled a listed impairment." Stockdale v. Comm'r of Soc. Sec., Civ. No. 16-2304, 2017 WL 3017217, at *11 (N.D. Ohio June 19, 2017). Thus, the ALJ properly considered Plaintiff's obesity at step three of the analysis.

### B. The ALJ's RFC Determination

Plaintiff argues that ALJ's RFC determination is not supported by substantial evidence. ECF No. 14, at 19-22. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's

---

[4] SSR 02-1p also provides that the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." 2002 WL 34686281, at *6.

descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**1. The ALJ's Mental RFC Determination**

The ALJ thoroughly considered the medical evidence and opinions of record regarding Plaintiff's mental impairments in determining her mental RFC. In May 2015, Plaintiff presented to the APS Clinics where treating psychiatrist Dr. Roberto Gutiérrez Morales ("Dr. Gutiérrez") diagnosed her with major depressive affective disorder. Tr. 99-101, 556-58. However, Dr. Gutiérrez opined that Plaintiff was oriented in all spheres and displayed logical, relevant, and coherent thought process. Id. Dr. Gutiérrez also opined that Plaintiff had adequate concentration, fair judgment, and decreased insight. Id. The ALJ noted that Plaintiff visited the APS Clinics in August 2015 and was prescribed Risperdal for reported auditory and visual hallucinations by treating general practitioner Dr. Hans Rivera Colón ("Dr. Rivera"). Tr. 95-96, 318, 552-54. On September 10, 2015, treating internist Dr. Franklin Plúguez Feliciano ("Dr. Plúguez") diagnosed Plaintiff with depression and anxiety. Tr. 532. On September 21, 2015, Dr. Gutiérrez found that Plaintiff did not have auditory or visual hallucinations and discontinued Risperdal. Tr. 89-92.

In December 2015, treating general practitioner Dr. Gretchen Enriquez Figueroa ("Dr. Enriquez") from the APS Clinics examined Plaintiff and found that she displayed appropriate affect, logical thought process, with no hallucinations or delusions. Tr. 80. Plaintiff was also found to be oriented in all spheres, with intact memory, adequate concentration, good

11

judgment, and adequate insight. Tr. 81. Subsequent progress notes from Dr. Enriquez revealed similar findings.[5] Tr. 104-06, 109-11.

In January 2016, consultant psychiatrist Dr. Jorge L. Suria Colón ("Dr. Suria") examined Plaintiff and diagnosed her with major depressive disorder. Tr. 565. Dr. Suria opined that Plaintiff was somewhat evasive and disheveled but noted that there were no signs of hallucinations or delusions. Tr. 564. Dr. Suria also opined that Plaintiff was well oriented, displayed adequate recent and remote memory, and showed sustained attention and normal insight. Tr. 564-65. Dr. Suria assigned a global assessment of functioning ("GAF") score of 55.[6] Tr. 565. In June 2016, Dr. Gutiérrez noted that Plaintiff had appropriate hygiene and clothing and was calm, cooperative, and friendly during the interview. Tr. 229. Dr. Gutiérrez also noted that Plaintiff did not suffer from hallucinations or delusions and opined that her thought process was logical, coherent, and relevant. Tr. 229. Dr. Gutiérrez also opined that Plaintiff had intact memory, good judgment, and adequate concentration and insight. Tr. 230. Subsequent progress notes from the APS Clinics revealed similar findings.[7] Tr. 178-82, 185-89, 192-94, 197-98, 201-05, 208-12, 222-26.

In February 2016, state agency consultant psychologist Dr. Hugo Román Rivera ("Dr. Román") reviewed the record and opined that Plaintiff presented mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate

---

[5] These progress notes refer to Dr. Enriquez's treatment of Plaintiff in February and March 2016.
[6] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score ranging from 41 to 50 indicates 'serious symptoms' or any 'serious impairment in social occupational, or school functioning.' A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" Sánchez Rosa v. Comm'r of Soc. Sec., Civ. No. 18-1506, 2019 WL 3202683, at *3 n.2 (D.P.R. July 16, 2019) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).
[7] These progress notes refer to Plaintiff's treatment at the APS Clinics in September 2016, December 2016, February 2017, May 2017, August 2017, November 2017, and December 2017.

12

difficulties in maintaining concentration, persistence, or pace. Tr. 273. In July 2016, state agency consultant psychologist Dr. Jesús Soto ("Dr. Soto") reviewed the record on reconsideration and concurred with Dr. Román's opinion. Tr. 292-93.

Plaintiff argues that the medical evidence shows that her mental condition worsened. ECF No. 14, at 20. Plaintiff, however, does not cite to any record evidence indicating that her mental condition worsened. Instead, the evidence in the record reflects that her mental condition remained stable. In January 2018, Dr. Enriquez opined that Plaintiff was oriented in all spheres and had intact memory, adequate concentration, and good judgment. Tr. 261. In April 2018, Dr. Rivera found that Plaintiff displayed appropriate affect and did not suffer from hallucinations or delusions. Dr. Rivera opined that Plaintiff maintained logical thought process and displayed intact memory, adequate insight and concentration, and good judgment. Tr. 252-54.

Plaintiff also argues that the ALJ's mental RFC determination is deficient because it did not include specific findings regarding her ability to cope with different work environments and accept supervision. ECF No. 14, at 20. Plaintiff's argument is untenable as the ALJ specifically considered her functioning in these areas in determining her mental RFC. The ALJ considered Plaintiff's ability to cope with the demands of different work environments by reasonably limiting her RFC to a job which involved only simple instructions and tasks. Tr. 316. Moreover, the ALJ considered Plaintiff's ability to accept supervision by finding that she could only frequently respond to supervision and coworkers. Id. The ALJ appropriately considered the medical evidence and opinions of record in determining Plaintiff's RFC regarding her mental limitations. His mental RFC determination is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the

Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

### 2. The ALJ's Physical RFC Determination

Plaintiff also alleges that the ALJ's physical RFC determination is not supported by substantial evidence. ECF No. 14, at 9, 15, 16-20. However, the ALJ reasonably considered the medical evidence in the record to find that Plaintiff could perform a range of light work. The ALJ noted that Plaintiff reported intense back pain that radiates to her knees, ankles, and hips and inflammation in her wrists and fingers. Tr. 316, 449. In December 2014, examining radiologist Dr. Rafael Grovas Porrata ("Dr. Grovas") opined that a radiologic study of Plaintiff's pelvis and hips showed narrowing at the superior aspect of both hip joints with early enthesiopathic changes at the pelvis, minimal sclerosis of the sacroiliac joints likely degenerative in nature, and mild bony osteopenia. Tr. 672.

On January 9, 2015, Plaintiff received emergency room treatment due to pain in her extremities. Tr. 58. That same day, examining radiologist Dr. Ana Lozada Suárez ("Dr. Lozada") opined that radiologic studies of the lumbar spine revealed central disc herniation at the L5-S1 level. Tr. 508. However, Dr. Lozada opined that no fractures or dislocations were seen, intervertebral spaces were intact, and sacroiliac joints were within normal limits. Id. In February 2015, treating physiatrist Dr. Arturo López Rivera ("Dr. López") examined Plaintiff and diagnosed her with degeneration of lumbosacral intervertebral disc, lumbago, enthesopathy of hip region, rheumatoid arthritis, and osteoarthrosis of the leg. Tr. 521. Dr. López found that Plaintiff had tenderness in the lumbosacral paravertebral muscles and muscle spasms at the lumbar area. Id. Dr. López also found that Plaintiff had restricted range of motion in the lumbar spine, normal range of motion in the lower extremities, and full range of motion in the knees but

14

with pain at the end of the range. Id. The ALJ noted that Dr. López prescribed Ultram for pain relief. Tr. 317, 522.

In April 2015, Dr. Plúguez treated Plaintiff for back pain. Tr. 76. An MRI of the lumbar spine conducted in November 2015 showed facet arthrosis, facet joint synovitis, and degenerative disc disease. Tr. 661. In February 2016, Dr. Blas examined Plaintiff and noted that she complained of low back pain and had generalized joint pain and tenderness to palpation over all joints, cervical, thoracic, and lumbar paraspinal muscles. Tr. 571, 572. Dr. Blas diagnosed Plaintiff with osteoarthritis, obesity, and chronic cervical, thoracic, and lumbar musculoskeletal pain. Tr. 572. However, Dr. Blas opined that Plaintiff could sit, stand, walk, travel, and handle and lift common objects. Tr. 572. It was also opined by Dr. Blas that Plaintiff had 4/5 muscular strength in both hands and that she could grip, grasp, pinch, finger tap, pick up a coin, and write. Tr. 573. Dr. Blas assessed Plaintiff with a normal gait. Tr. 574.

The ALJ noted in his decision that Plaintiff received conservative treatment for her pain consisting of medications. Tr. 318. The ALJ also noted that the record evidence did not reflect treatment for pain involving physical therapy, injections, nerve blocks, or any evaluation by a neurosurgeon. Id. Plaintiff has not cited to any record evidence discrediting the ALJ's findings that there was no evidence in the record of physical therapy, injections, nerve blocks, or an evaluation by a neurosurgeon.

In March 2016, state agency consultant internist Dr. Ulises Meléndez ("Dr. Meléndez") reviewed the record evidence and opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour work day. Tr. 275. Dr. Meléndez found that Plaintiff could occasionally carry and/or lift twenty pounds and frequently carry and/or lift ten pounds. Id. Dr. Meléndez also found that Plaintiff could frequently climb ramps

and stairs, balance, kneel, and crawl. Tr. 275. It was also opined by Dr. Meléndez that Plaintiff could occasionally crouch, stoop, climb ladders, ropes, and scaffolds. Tr. 275, 276. In July 2016, state agency consultant internist Dr. Pedro Nieves ("Dr. Nieves") reviewed the record upon reconsideration and concurred with Dr. Meléndez's opinion. Tr. 294-96. The ALJ assigned partial weight to the opinions of Dr. Meléndez and Dr. Nieves. Tr. 320. The ALJ found that Plaintiff was more limited in her ability to sit and stand in light of her testimony that staying in the same position for prolonged periods exacerbated her pain. Tr. 21-23, 320. The ALJ also noted that the record reflected greater musculoskeletal conditions that would justify greater restrictions on Plaintiff's postural capacities. Tr. 320.

In April 2016, Dr. Plúguez noted that Plaintiff complained of strong pain and edema was present in the extremities. Tr. 113, 589. In July 2016, Dr. Lozada opined that x-rays of the right knee showed osteoarthritis with predominant involvement of the patellofemoral space. Tr. 684. The ALJ accommodated Plaintiff's complaints of pain when in the same position for prolonged periods by including a limitation in her RFC that she needed to alternate positions between sitting and standing at intervals of two hours during an eight-hour workday. Tr. 316.

Plaintiff contends that the ALJ did not consider her obesity in the RFC determination and failed to evaluate the effects of her obesity in combination with other impairments. ECF No. 14, at 13-15. Plaintiff's argument cannot prosper as the ALJ specifically considered her obesity in the RFC analysis. In his decision, the ALJ noted that Plaintiff reported that she was 4'11" tall and weighed 270 pounds when she filed her claim for disability benefits. Tr. 318, 433. The ALJ also noted that Plaintiff was assessed with body mass indexes ("BMI") ranging from 50.49 to 50.5. Tr. 510, 521. The National Institutes of Health classify a BMI of 30.0 or above as obesity. Tr. 318; SSR 02-1p, 2002 WL 34686281, at *2. Thus, the ALJ properly found that Plaintiff was

classified as obese because she presented BMIs over 30.0. Tr. 318. The ALJ noted that Plaintiff attributed her obesity to prescription medication. Tr. 21, 22, 316, 317.

In his decision, the ALJ noted that "[o]besity may have an adverse impact upon co-existing impairments. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule." Tr. 318. The ALJ proceeded to explain that he had taken these considerations into account in reaching Plaintiff's RFC and noted that "no treating or examining medical source has specifically attributed additional or cumulative limitations to [Plaintiff's] obesity." Tr. 318. Plaintiff has not identified "any evidence that her obesity imposed greater functional limitations than those found by the ALJ." Arseneau v. Berryhill, Civ. No. 17-398, 2018 WL 3854795, at *5 (D.N.H. Aug. 14, 2018). The ALJ properly considered Plaintiff's obesity and his physical RFC determination is supported by substantial evidence. See Durant-Irizarry v. Comm'r of Soc. Sec., Civ. No. 14-1444, 2015 WL 8514587, at *4 (D.P.R. Dec. 11, 2015).

**C. Plaintiff's Allegations of Pain**

Plaintiff also claims that the ALJ failed to consider her complaints of pain. ECF No. 14, at 19. In evaluating a claimant's subjective complaints of pain, the ALJ must consider the Avery factors. See Vargas-López v. Comm'r of Soc. Sec., 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The Avery factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and

complaints of pain in order to make a supportable credibility finding." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted).

In the instant case, "[a]lthough the ALJ did not mechanically enumerate each factor, his opinion and the transcript of the hearing show a full consideration of the factors." González v. Comm'r of Soc. Sec., Civ. No. 14-1669, 2016 WL 1171511, at *3 (D.P.R. Mar. 24, 2016); see Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("Generally, a failure to address all of the Avery factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Regarding the first factor, nature and location of alleged pain, Plaintiff testified that she has pain in her whole body and particularly in her low back and neck. Tr. 19, 22. The ALJ noted that in January 2015, Plaintiff received emergency room treatment due to pain in the extremities. Tr. 58, 317. It was also noted by the ALJ that Dr. Plúguez treated Plaintiff for back pain in April 2015. Tr. 76, 317. In February 2016, Dr. Blas examined Plaintiff and he diagnosed her with cervical, thoracic, and lumbar musculoskeletal pain. Tr. 317, 572.

With regard to the second factor, precipitating and aggravating factors, Plaintiff testified that she cannot sit or stand for too long and she has to frequently alternate positions due to pain. Tr. 21-23. The ALJ considered the third factor concerning Plaintiff's pain medication as Dr. López prescribed Ultram for pain relief. Tr. 317, 522. Plaintiff testified at the hearing that the pain medication helps very little. Tr. 19, 20.

Regarding the fourth factor, treatment other than medication, the ALJ noted in his decision that Plaintiff's treatment for pain was conservative as there was no record evidence of physical therapy, injections, nerve blocks, or any evaluation by a neurosurgeon. Tr. 318. The ALJ also considered the fifth factor, functional limitations, as Plaintiff testified that she can stand

page

for less than five minutes at a time and can only walk for twenty minutes. Tr. 22. Plaintiff also testified that she can only sit for twenty minutes without alternating position. Tr. 22, 23. However, the ALJ noted that Dr. Blass assessed Plaintiff with a normal gait and opined that she can sit, walk, and travel. Tr. 317, 572.

Regarding the sixth factor, activities of daily living, Plaintiff testified that she cannot cook and that her husband and son do basic house cleaning and shopping. Tr. 21, 23. Plaintiff reported to Dr. Blas that she spends the day lying around the house or watching the TV. Tr. 563. Plaintiff also reported that she is able to take care of her personal grooming and that she manages her own medications. Tr. 563. Thus, contrary to Plaintiff's argument, the ALJ considered Plaintiff's complaints of pain and the Avery factors in both the hearing and the decision. See Mercado, 767 F. Supp. 2d at 285.

### D. The ALJ's Step Five Determination

Lastly, Plaintiff alleges that the ALJ erred at step five in the sequential process by finding that there was work that she could perform existing in significant numbers in the national economy. ECF No. 14, at 9. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Plaintiff claims that the ALJ provided a misleading hypothetical to the vocational expert ("VE"). ECF No. 14, at 9. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash her RFC argument at this final step.[8] See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017). The ALJ provided an accurate hypothetical to the VE,

---

[8] Plaintiff also argues, without more, that the ALJ did not consider her obesity at step five. ECF No. 14, at 13. However, the ALJ adequately considered her obesity in the RFC determination and provided the well-supported hypothetical to the VE. See Burch v. Barnhat, 400 F.3d 676, 684 (9th Cir. 2005).

and thus, the step five determination is supported by substantial evidence. Tr. 25-28. See Berríos-López v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) ("The ALJ was entitled to credit the vocational expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.").

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2021.

s/Marcos E. López  
U.S. Magistrate Judge
